WENTWORTH, Judge,
dissenting.
I would conclude for affirmance on the ground that the undisputed sexual batteries by D.A.O. on his niece T.O., commencing when she was five and ending when he was nineteen while both resided in the child’s grandparents’ home, brought him within the definition of child abuse in section 415.503(3) and (12), Florida Statutes, as including harm by specified custodians “or other person [e.s.] responsible for the child’s welfare”:
‘other person responsible for a child’s welfare’ includes ... any other person legally responsible for the child’s welfare in a residential setting, (e.s.)
Societal interests protected by the child abuse registry statute are of course quite different from those involved in criminal statutes.[1] However, since sexual inter *383 course with a child is penalized by numerous Florida laws, including specific definition of incest to include such acts by an uncle, section 826.04, Florida Statutes, it is clear that, at least to the extent of compliance with those statutes, D.A.O. had a “legal” responsibility for the child’s welfare. At the times here in question he had that legal responsibility in a residential setting as required by the definition of abuse in section 415.503(3) as harm to a child’s welfare by any “person responsible for the child’s welfare.” I would therefore affirm even assuming (without deciding) that the ejusdem generis principle limits the statute’s broad introductory definition by the ensuing enumeration of persons which specifies those persons “legally responsible for the child’s welfare in a residential setting.”
I would not, however, foreclose a determination that this statute may cover a person’s acts or omissions against a child in the residential context quite independent of a violation of any specific statute or any delegation of custodial authority over the child. The statute, in my opinion, defines a flexible protected zone for children, within which harmful acts by other persons against them may give rise to the statutory process for guarding against that person’s future access to children in certain settings.
The “responsibility” referenced by the statute has no explicit durational or other formal standards, and I find no basis for a requirement that the responsible person must have any legal authority over the child. For example, the reference in the statute to all school employees as included persons does not limit that category to employees having authority over children.
The statutory enumeration does necessarily - exclude harm by casual intruders whose conduct may more likely produce some record other than an abuse registry for subsequent employment purposes, or harm from a failure to act by persons whose omission is irrelevant because they have no legal right or responsibility toward the child. But I would not extend such exclusions to a competent person such as D.A.O. who was in fact residing in the child’s grandparents’ home. Responsibility for a child, even legal responsibility, can of course be shared as well as singular, depending on circumstances.. Prior decisions in Florida under this statute do not dictate the result here, but even assuming a limitation to custodial or familial relationships, appellant was a family member nearly three times the age of the child at the time of the first act here in question.
I would affirm the order appealed, which reads as follows in pertinent part:
D.A.O., T.O.’s uncle, was in a position of apparent authority when T.O. resided with her grandparents where D.A.O. also resided. Thus, D.A.O. was an ‘other person responsible for the child’s welfare’ for purposes of Chapter 415, Florida Statutes. The background screening statutes set a minimum standard. As stated in the 079-100 Annual Report of the Attorney General 250, 251 (1979), ... ‘[w]hen a statutory definition is phrased in terms of what it includes rather than what the term means, the fact that the statute does not mention a particular entity does not imply that the entity falls outside of the definition.’ ... The use of the expansive words ‘any other person ... in a residential setting’ reflects an intention to embrace all of the persons to which the generality of the term extends. ... D.A.O. can certainly be considered to have been legally responsible for T.O. as this state of legal responsibility does not require a statutory mandate or court order, but is only the undertaking of a duty to exercise care in relation to another. Id. at 252.
... Hall v. State, 187 So. 392, 298 (Fla.1939), states that ‘[t]he word “duty” when used in a statute, is not necessarily confined strictly to those adults which are expressly detailed in the statute ... but may be construed to cover those which are fairly or necessarily implied.’ Commonwealth v. Mack, 359 A.2d 770, 772 (PA 1976), points out that statutes, such as the one at issue here, are to be given meaning by reference to the ‘common sense of the community and the *384 broad protective purposes for which they are enacted.’ What state official would place a foster child in a home where this man lives if he knew that D.A.O. has a history of having sex with a 5 year old child? What mother would take her child to a day care center where this man works if she knew his history? What father would happily drop his child off at a day camp if he knew that someone with these propensities was to be her counsel- or? The child abuse statute was enacted to protect children from being under the care and control of those who have a proven history of molesting or otherwise hurting children.
Chapter 39.12(3), Florida Statutes, prohibits the department from destroying juvenile records that relate to crimes that, if committed by an adult, would disqualify the person from working with children. Surely, the intent of the legislature is also to protect the public from people like D.A.O.
... [PJersons of apparent authority over a child, such as an uncle living in the same residence, qualify as other persons responsible for the child in a residential setting, (e.s.)

. W.M. v. Department of Health & Rehabilitative Services, 553 So.2d 274 (Fla. 1st DCA 1989); Slaughter v. State, 538 So.2d 509 (Fla. 1st DCA 1989).